John R. Dodd (admitted *pro hac vice*)
Baker & McKenzie LLP
1111 Brickell Avenue, 10th Floor
Miami, FL 33130
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: john.dodd@bakermckenzie.com

Blaire Cahn
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Counsel for the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 11 |
| ACORDA THERAPEUTICS, INC., *et al.*,[1] | Case No. 24-22284 (DSJ) |
| Debtors. | Jointly Administered |
| _____/ | |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT**, on July 1, 2024, the Debtors filed the *First Amended Joint Chapter 11 Plan of Liquidation of Acorda Therapeutics, Inc. and Its Affiliated Debtors* [Doc. No. 346] (as amended, modified, or supplemented, the "**Plan**") and the *First Amended Disclosure Statement for Joint Chapter 11 Plan of Liquidation of Acorda Therapeutics, Inc. and Its Affiliated Debtors* [Doc. No. 348] (the "**Disclosure Statement**").[2]

**PLEASE TAKE FURTHER NOTICE THAT**, on July 3, 2024, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered the

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Acorda Therapeutics, Inc. (1168), Civitas Therapeutics, Inc. (2814), Biotie Therapies, LLC (2149), Biotie Therapies AG (N/A), Neuronex, Inc. (5094), and Acorda Therapeutics Limited (N/A). For the purposes of these chapter 11 cases, the address for the Debtors is: 2 Blue Hill Plaza, 3rd Floor, Pearl River, New York 10965.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement Order, as applicable.

*Order (I) Approving Disclosure Statement; (II) Establishing Notice and Objection Procedures for Confirmation of the Plan; (III) Approving Notice Packages and Procedures for Distribution Thereof; (IV) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan; and (V) Granting Related Relief* [Doc. No. 356] (the "**Disclosure Statement Order**").

**PLEASE TAKE FURTHER NOTICE THAT**, as contemplated by the Plan and the Disclosure Statement Order, the Debtors hereby file the following documents that are part of the supplement to the Plan (the "**Plan Supplement**"):

| Exhibit | Document |
|---------|----------|
| A | Liquidation Trust Agreement |
| B | Identification of the Liquidation Trustee |
| C | Assumption Schedule |
| D | Wind Down Budget |

**PLEASE TAKE FURTHER NOTICE THAT** that the documents contained in this Plan Supplement are integral to and considered part of the Plan. If the Plan is confirmed, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** that the documents contained in the Plan Supplement are not final and remain subject to continuing negotiations among the Debtors and other interested parties. Accordingly, the Debtors reserve the right to alter, amend, modify, or supplement any document of, or add any document to, the Plan Supplement subject to the terms and conditions of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider confirmation of the Plan will commence on **August 7, 2024** at **10:00 a.m.** (prevailing Eastern Time) before the Honorable David S. Jones, United States Bankruptcy Court Judge, in the United States Bankruptcy Court for the Southern District of New York, Courtroom 701, One Bowling Green, New York, NY 10004.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **July 31, 2024, at 4:00 p.m.** (prevailing Eastern Time) (the "**Plan Objection Deadline**"). Any objection to the Plan must: (i) be in writing in the English language; (ii) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (iii) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (iv) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Plan Objection Deadline:

| *Debtors* |
|---|
| Acorda Therapeutics, Inc., *et al.*<br>Neil Belloff<br>Michael A. Gesser<br>2 Blue Hill Plaza, 3rd Floor<br>Pearl River, New York 10965<br>Email: nbelloff@acorda.com<br>mgesser@acorda.com |

| *Counsel to the Debtors* | |
|---|---|
| John R. Dodd (admitted *pro hac vice*)<br>Baker & McKenzie LLP<br>1111 Brickell Avenue, 10th Floor<br>Miami, Florida 33130<br>Telephone: 305-789-8900<br>Facsimile: 305-789-8953<br>Email: john.dodd@bakermckenzie.com | Blaire Cahn<br>Baker & McKenzie LLP<br>452 Fifth Avenue<br>New York, New York 10018<br>Telephone: 212-626-4100<br>Facsimile: 212-310-1600<br>Email: blaire.cahn@bakermckenzie.com |

| *U.S. Trustee* |
|---|
| United States Trustee for Region 2<br>Attn: Tara Tiantian<br>Alexander Hamilton U.S. Custom House<br>One Bowling Green, Suite 534<br>New York, New York 10004<br>Telephone: (212) 510-0500 |

| |
|---|
| |

| *Counsel to the Committee* | *Counsel to the Ad Hoc Noteholder Group and DIP Lenders* |
|---|---|
| Darren Azman<br>Kristin K. Going<br>Stacy Lutkus<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Email: dazman@mwe.com<br>kgoing@mwe.com<br>salutkus@mwe.com | Matthew Warren<br>Lindsey Henrikson<br>Paul Hastings LLP<br>71 South Wacker Drive, Suite 4500<br>Chicago, Illinois 60606<br>Email: mattwarren@paulhastings.com<br>lindseyhenrikson@paulhastings.com |

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, free of charge, you should contact Kroll Restructuring Administration LLC, the solicitation agent retained by the Debtors in these Chapter 11 Cases (the "**Solicitation Agent**") by: (i) calling the Solicitation Agent at (844) 712-1917 (toll free U.S. & Canada) or +1 (646) 777-2412 (international); (ii) visiting the

Debtors' restructuring website at: https://cases.ra.kroll.com/Acorda; and/or (iii) writing to the Solicitation Agent at: (a) Acorda Therapeutics, Inc. Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, New York 11232, if sent by first class mail, or (b) by e-mail to AcordaInfo@ra.kroll.com (with "**Acorda Solicitation Inquiry**" in the subject line). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://www.nysb.uscourts.gov.

Dated: July 24, 2024

/s/ *Blaire Cahn*

John R. Dodd (admitted pro hac vice)
**BAKER & McKENZIE LLP**
1111 Brickell Avenue, 10th Floor
Miami, FL 33131
Telephone: 305-789-8900
Facsimile: 305-789-8953
Email: john.dodd@bakermckenzie.com

and

Blaire Cahn
**BAKER & McKENZIE LLP**
452 Fifth Avenue
New York, NY 10018
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com

*Counsel for the Debtors
and Debtors-in-Possession*

**<u>EXHIBIT A</u>**

**Liquidation Trust Agreement**

## LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement (this "Trust Agreement")[1], dated as of [_____], 2024, is by and among Acorda Therapeutics, Inc. and its affiliated debtors (collectively, the "Debtors")[2] in the chapter 11 bankruptcy cases jointly administered under Case No. 24-22284 (the "Chapter 11 Cases") currently pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and [_____], solely in its capacity as trustee hereunder (the "Trustee"), and is being entered into in connection with the [*First Amended Joint Chapter 11 Plan of Liquidation of Acorda Therapeutics, Inc. and Its Affiliated Debtors*] (as amended or modified, the "Plan")[3], which was confirmed by the Bankruptcy Court by Order dated [_____], 2024 (the "Confirmation Order"), and provides, *inter alia*:

(a)     The Liquidation Trust Assets[4] of the Debtors and the Debtors' chapter 11 estates (the "Estates") as of the Effective Date, will on the Effective Date be transferred to, and vest automatically in, the Liquidation Trust, as required by the Plan, for distribution and use in accordance with the terms of the Plan, including to the holders of Allowed Prepetition Notes Secured Claims and holders of Allowed General Unsecured Claims entitled to receive Liquidation

---

[1] The liquidation trust formed pursuant to this Trust Agreement, the "Liquidation Trust".

[2] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Acorda Therapeutics, Inc. (1168), Civitas Therapeutics, Inc. (2814), Biotie Therapies, LLC (2149), Biotie Therapies AG (N/A), Neuronex, Inc. (5094), and Acorda Therapeutics Limited (N/A).

[3] Any capitalized term contained herein without definition shall have the definition set forth in the Plan.

[4] As more fully described in the Plan, the "Liquidation Trust Assets" means (a) all remaining Assets of each of the Debtors that have not been sold or abandoned prior to the Effective Date following funding of the Wind Down Reserve; (b) the Liquidation Trust Initial Funding, which shall be funded from the Wind Down Reserve; (c) all assets recovered by the Trustee on behalf of the Liquidation Trust on or after the Effective Date through enforcement, resolution, settlement, collection, return, or otherwise; (d) all Causes of Action of the Debtors or the Estates, other than those expressly released pursuant to the Plan; and (e) any proceeds resulting from the Trustee's investment of the Liquidation Trust Assets on or after the Effective Date owned by the Debtors on the Effective Date.

1

Trust Beneficial Interests (the "Beneficiaries") pursuant to and in accordance with this Trust Agreement, the Plan, the Confirmation Order, and the Bankruptcy Code;

(b)    For federal income tax purposes, (i) the Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust; and (ii) all parties (including the Debtors, the Trustee and the Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in this Trust Agreement, as a transfer of such assets by the Debtors to the holders of Allowed Claims entitled to Distributions from the Liquidation Trust Assets, followed by a transfer by such holders to the Liquidation Trust;

(c)    In accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order, the Liquidation Trust Assets will be liquidated or otherwise disposed of, and subject to payment of certain expenses, the proceeds of such liquidation or disposition will be distributed to the Beneficiaries and other parties in interest; and

(d)    The Disbursing Agent (as defined below) will make distributions of consideration to all other holders of Allowed Claims (including, without limitation, Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, DIP Claims, Prepetition Notes Secured Claims, and Other Secured Claims (as applicable)), pursuant to the Plan (including Articles IV, V and VI thereof) and Article VII hereof.

**NOW, THEREFORE,** pursuant to the Plan and in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

# ARTICLE I

## DECLARATION OF TRUST

**1.1    Purpose of the Liquidation Trust.** The Debtors and the Trustee, pursuant to the Plan and the Confirmation Order, and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Trust Agreement, hereby constitute and create the Liquidation Trust for the purpose of administering post-Effective Date responsibilities of the Debtors, including, but not limited to (a) being vested with and liquidating the Liquidation Trust Assets, (b) making Distributions to holders of Allowed Claims in accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order, (c) resolving all Disputed Claims and effectuating the Claims reconciliation process pursuant to the procedures prescribed in the Plan, (d) prosecuting, settling, and resolving Causes of Action that are Liquidation Trust Assets, (e) recovering, through enforcement, resolution, settlement, collection, or otherwise, assets on behalf of the Liquidation Trust (which such assets shall become part of the Liquidation Trust Assets), (f) effectuating the process to wind down, dissolve and liquidate the Estates and distribute any remaining assets in accordance with the Plan (the "Wind Down"), if and to the extent necessary, including taking any steps to dissolve, liquidate, bankrupt or take other similar action with respect to each Debtor, including by terminating the corporate or organizational existence of each such Debtor, and (g) performing all actions and executing all agreements, instruments and other documents necessary to effectuate the purpose of the Liquidation Trust. Notwithstanding anything to the contrary in this Trust Agreement, the primary purpose of the Liquidation Trust is liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business.

1.2     The Liquidation Trust shall not have authority to engage in a trade or business, and no portion of the Liquidation Trust Assets shall be used in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof.

1.3     **Name of the Liquidation Trust.** The Liquidation Trust established hereby shall be known as the ["Acorda Therapeutics Liquidation Trust"]. In connection with the exercise of its powers, the Trustee may use such name or such variation thereof as it deems necessary and may transact the business and affairs of the Liquidation Trust in such name.

1.4     **Transfer of Assets to Create Liquidation Trust.** The Debtors and the Estates hereby grant, release, assign, transfer, convey, and deliver the Liquidation Trust Assets to the Liquidation Trust as of the Effective Date, to have and to hold unto the Trustee and its successors in trust and to be applied as specified in this Trust Agreement and the Plan. To the extent required, the Debtors shall cause the Liquidation Trust Assets (including any applicable proceeds of the Liquidation Trust Assets) to be transferred to the Liquidation Trust. Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, and except as otherwise provided herein or in the Plan, such assets shall become Liquidation Trust Assets, and the Debtors shall retain no interest in such Liquidation Trust Assets. On the Effective Date, the Debtors shall execute and deliver or cause to be executed and delivered to or upon the order of the Trustee all such documents, in recordable form where necessary or appropriate, and the Debtors shall take or cause to be taken such further or other action, as the Trustee may deem appropriate, to vest or perfect in or confirm to the Trustee, or upon the order of the Trustee, title to and possession of all of the Liquidation Trust Assets.

**1.5    Acceptance by Trustee.** The Trustee hereby accepts (a) the appointment to serve as Trustee; (b) the transfer of the Liquidation Trust Assets on behalf of the Liquidation Trust, including the Liquidation Trust Initial Funding, and (c) the trust imposed on the Trustee by this Trust Agreement. The Trustee agrees to receive, hold, administer, and distribute the Liquidation Trust Assets and the income derived from the foregoing, if any, in each case pursuant to the terms of this Trust Agreement, the Plan and the Confirmation Order.

## ARTICLE II

## TRUSTEE AND THE OVERSIGHT COMMITTEE

**2.1    Appointment.** The initial Trustee shall be [_____].

**2.2    Term of Service.** The Trustee shall serve until (a) the termination of the Liquidation Trust in accordance with Article IX of this Trust Agreement; or (b) the Trustee's resignation, death or removal in accordance with this Trust Agreement.

**2.3    Services.** The Trustee shall be entitled to engage in such other activities as he deems appropriate which are not in conflict with this Trust Agreement, the Plan, the Confirmation Order or the interests of the Beneficiaries. The Trustee shall devote such time as is reasonably necessary to fulfill all of its duties as Trustee.

**2.4    Resignation, Death or Removal of Trustee.** The Trustee may resign at any time upon thirty (30) days' written notice, in accordance with the notice provisions of the Plan, to the Bankruptcy Court and the United States Trustee. Such resignation shall become effective prior to the expiration of such thirty (30) day notice period upon the appointment of a permanent or interim successor Trustee. The Trustee may be removed for cause by the Bankruptcy Court *sua sponte* or upon motion by a party in interest; provided, however, in any such case, the Trustee shall remain vested with all rights and obligations under this Trust Agreement pending the Bankruptcy Court's

adjudication. Upon the resignation, death or removal of the Trustee, the Oversight Committee shall appoint a successor Trustee without need for approval of the Bankruptcy Court. If a successor Trustee is not so appointed within 30 days of such resignation, death or removal of the Trustee, the Bankruptcy Court shall appoint a successor in accordance with the best interests of the Beneficiaries. Upon appointment pursuant to this Section 2.4 of the Trust Agreement, the successor Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of his, her, or its predecessor. A successor Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege.

     **2.5**    **Trust Continuance.** The death, resignation, or removal of the Trustee shall not terminate the Liquidation Trust or revoke any existing agency (other than any agency of such Trustee as the Trustee hereunder) created pursuant to this Trust Agreement or invalidate any action previously taken by the Trustee. By accepting the position as successor Trustee or interim Trustee, such Trustee agrees that the provisions of this Trust Agreement shall be binding upon, and inure to the benefit of, such Trustee and all of its heirs and legal and personal representatives, successors, or assigns.

     **2.6**    **Retention and Payment of Professionals.** Without any further notice to any party or action, order or approval of the Bankruptcy Court, the Trustee, on behalf of the Liquidation Trust, may retain such professionals (including professionals previously employed by the Debtors, the Creditors' Committee, or members of the Creditors' Committee, but excluding any Affiliates, relatives, or Related Parties to the Trustee) that, in the discretion of the Trustee, are necessary to assist the Trustee in the performance of the Trustee's duties under this Trust Agreement and the Plan, subject to the Wind Down Budget (the "Trustee's Professionals"). The Trustee's

Professionals shall submit monthly invoices, which shall be consistent with the Wind Down Budget, to the Trustee and the Oversight Committee. The Trustee and the Oversight Committee shall have ten (10) days after receipt of any such invoice to advise such Trustee Professional in writing of any objections to the invoice. If no objection to the invoice is made within that time period, then the Trustee may pay that invoice without Bankruptcy Court approval. If there is a dispute as to a part of an invoice, the Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount; *provided, however*, that the parties shall first attempt to resolve the dispute before submitting the dispute to the Bankruptcy Court for resolution. The Trustee and the members of the Oversight Committee shall not be personally liable to any of the Trustee's Professionals for any unpaid invoices or claims for services rendered. The Bankruptcy Court shall retain jurisdiction to resolve any disputes relating to the foregoing.

**2.7    Bond.** The Trustee shall be permitted, but is not required, to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. The cost of any bond shall be a Liquidation Trust Expense.

**2.8    Liquidation Trust Oversight Committee**. In furtherance of the Plan, on the Effective Date, the Liquidation Trust oversight committee (the "Oversight Committee") shall be established to oversee the implementation of the Plan and Liquidation Trust. The Oversight Committee shall have access to the Trustee and the right to consult with and, to the extent provided in this Trust Agreement and the Plan, direct the Trustee in connection with the administration and implementation of the Plan on and after the Effective Date as set forth in this Trust Agreement and the Plan. The Oversight Committee shall initially consist of one member designated by the Creditors' Committee prior to the Effective Date and two members designated by a majority of holders of the Prepetition Notes Claims prior to the Effective Date (together, the "Prepetition

7

Noteholder Designee"). The Oversight Committee may adopt by-laws to govern its activities, which shall be substantially similar to the by-laws governing the Creditors' Committee, with such amendments as the Oversight Committee may agree. Members of the Oversight Committee shall not be compensated for performance of their duties in connection with the Oversight Committee.

## ARTICLE III

## POWERS AND LIMITATIONS OF TRUSTEE

**3.1    General Powers of Trustee.** In connection with the administration of the Liquidation Trust, and subject to the Oversight Committee and the provisions set forth in this Trust Agreement, the Trustee is authorized to perform those acts reasonably necessary and desirable to accomplish the purposes of the Liquidation Trust set forth in this Trust Agreement and the Plan. The Liquidation Trust shall succeed to all of the rights and responsibilities of the Debtors necessary to protect, conserve, pursue, and liquidate all Liquidation Trust Assets as quickly as reasonably practicable, including without limitation all applicable attorney-client and attorney work product privileges. In furtherance of the purposes of the Liquidation Trust, except as otherwise provided in this Trust Agreement, the Liquidation Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors have or would have had under applicable law. Subject to the limitations set forth in this Trust Agreement, the Plan, and the Confirmation Order, the Trustee may exercise all powers granted hereunder related to, or in connection with, the collection, prosecution, settlement, liquidation, and distribution to the Beneficiaries, of the Liquidation Trust Assets. Without limiting, but subject to, the foregoing, the Trustee shall be expressly authorized:

(a)    To take all steps and execute all instruments and documents necessary to make Distributions to Beneficiaries and to perform the duties assigned to the Trustee under this Trust Agreement and the Plan.

(b)    To implement, enforce, comply with and effectuate, as applicable, all provisions of the Plan and the obligations under the Plan.

(c)    To employ, retain, or replace professionals to represent the Trustee with respect to the Trustee's responsibilities.

(d)    To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Trustee deems necessary or advisable.

(e)    To open and maintain appropriate trust accounts in one or more federally insured domestic banks in the name of the Liquidation Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves that may be required, in the name of the Liquidation Trust.

(f)    To take any actions necessary to (A) resolve all matters related to the Liquidation Trust Assets and (B) vest such assets in the Liquidation Trust, including, without limitation:

(i)    To collect, receive, conserve, and manage the Liquidation Trust Assets.

(ii)    To hold legal title to any and all Liquidation Trust Assets.

(iii)    To investigate, pursue, prosecute, settle, defend, collect, and liquidate the Liquidation Trust Assets.

(iv)   To assert or waive any attorney-client, work product, or other privilege on behalf of the Debtors and Estates with regard to the Liquidation Trust Assets.

(v)   Consistent with applicable law, to abandon, withdraw, or otherwise dispose of, including by donation to a charity designated by the Trustee, any Liquidation Trust Asset that is not Cash and, in the Trustee's judgment, (A) cannot be sold, settled, or otherwise reduced to Cash in a commercially reasonable manner or (B) is of no significant value or benefit to the Liquidation Trust.

(vi)   If any of the Liquidation Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee some form of adequate security as designated by the Trustee; confer upon such trustee all the rights, powers, privileges and duties of Trustee, subject to the conditions and limitations of this Trust Agreement, except as modified or limited by the Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); require such other trustee to be answerable to the Trustee for all monies, assets, and other property that may be received in connection with the administration of all property; and remove such other trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Trustee of a written instrument declaring such other trustee removed from office, and specifying the effective date and time of removal.

(g)     To make Distributions of the Liquidation Trust Assets and any proceeds thereof in accordance with the terms of the Plan.

(h)     To hold any unclaimed Distributions to a Beneficiary in accordance with this Trust Agreement, the Confirmation Order, and the Plan.

(i)     To pay all lawful, expenses, debts, charges and liabilities of the Liquidation Trust.

(j)     To prepare and file appropriate tax returns and other reports on behalf of the Debtors and pay taxes or other obligations owed by the Debtors (including, without limitation, any Allowed Administrative Expense Claims and Allowed Priority Tax Claims).

(k)     Except as otherwise provided in this Trust Agreement, the Plan (including the release provisions thereof), the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Liquidation Trust may hold against any Person, and any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan. From and after the Effective Date, the Trustee may settle or compromise any Disputed Claim without the approval of the Bankruptcy Court; *provided*, that any settlement of a Disputed Claim that results in an Allowed Claim in excess of [$500,000] must be made after notice and an opportunity for parties in interest to object in accordance with the Plan.

(l)     As set forth in Article VII of the Plan, to file, prosecute, settle, or dispose of any and all objections to or requests for estimation of Claims against the Debtors; provided that

such objections and requests for estimation are served and filed on or before the Claims Objection Bar Date.

(m)     To take discovery from third parties, including but not limited to, issuing Fed. R. Bankr. P. 2004 subpoenas and discovery requests.

(n)     To exercise such rights of setoff as the Debtors or the Debtors' Estates may have had against any Beneficiary and/or seek Court approval of such exercise.

(o)     To voluntarily engage in arbitration or mediation with regard to any dispute.

(p)     To enter into and consummate any transactions for the purpose of dissolving the Debtors.

(q)     To wind down the affairs of the Liquidation Trust and the Debtors, if and to the extent necessary, including establishing any administrative reserves necessary to close the Liquidation Trust, making all Distributions to the Beneficiaries and other creditors provided for or contemplated by the Plan, and taking any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to each Debtor, including by terminating the corporate or organizational existence of each such Debtor.

(r)     To take such actions as are necessary or appropriate to close any of the Debtors' Chapter 11 Cases.

(s)     To send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002, and to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

(t)     To maintain the books and records and accounts of the Debtors and to resolve issues pertaining to the retention or disposal of the books and records of the Debtors.

(u)    To provide periodic reports and updates to the Oversight Committee regarding the status of the administration of the Liquidation Trust Assets and consulting with the Oversight Committee regarding the status of Causes of Action and any other matters addressed in this Trust Agreement, all in connection with the Oversight Committee's role of overseeing the implementation of the Plan.

(v)    To take any other actions not inconsistent with the provisions hereof that the Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

[Notwithstanding anything in this Section 3.1 to the contrary, the Trustee shall be required to obtain the consent of the Prepetition Noteholder Designee with respect to the following: (i) the settlement, compromise, consensual allowance, or other resolution of any liens or ownership claims asserted against property of the Debtors by any person other than the Prepetition Agent and Prepetition Noteholders, (ii) the settlement, compromise, consensual allowance, or other resolution of any Priority Tax Claims or Administrative Expense Claims, in each case, for an amount greater than $250,000, and (iii) the sale, liquidation, settlement, or prosecution of any Liquidation Trust Assets.]

**3.2    Limitations on the Trustee.** Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

(a)    Take any action in contravention of this Trust Agreement, the Plan or the Confirmation Order.

(b)    Take any action that would significantly jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes.

(c)    Grant liens on any of the Liquidation Trust Assets.

(d)    Guaranty any debt.

(e)        Loan Liquidation Trust Assets to the Trustee.

(f)        Purchase Liquidation Trust Assets from the Liquidation Trust.

(g)        Transfer Liquidation Trust Assets to another trust with respect to which the Trustee serves as trustee.

(h)        Make investments other than invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

(i)        Act as an attorney, agent, or other professional for any Beneficiary in connection with the Debtors.

**3.3        Trustee Conflicts of Interest.** If the Trustee determines in its reasonable discretion that the Trustee has a material conflict of interest with respect to any matter, the Trustee shall, at its option and in its own discretion, designate a person to act on behalf of the Liquidation Trust solely with respect to such matter with such designee's authority to act on behalf of the Liquidation Trust to terminate upon the matter's conclusion. If the Trustee is unable to appoint a designee to act on behalf of the Liquidation Trust with respect to any matter, the Trustee, after notice to the United States Trustee, may request the Bankruptcy Court to approve a designee of the Trustee to act on behalf of the Liquidation Trust solely with respect to such matter, with such designee's authority to act on behalf of the Liquidation Trust to automatically terminate upon the matter's conclusion.

## **ARTICLE IV**

## **LIABILITY OF TRUSTEE**

**4.1        Trustee's Standard of Care; Exculpation.** Neither the Trustee, the Oversight Committee, nor any partner, director, officer, member, manager, affiliate, employee, employer,

professional, agent or representative of the Trustee, or members of the Oversight Committee ("Indemnified Persons") shall be held personally liable in connection with the affairs of the Liquidation Trust to any Person, including any Beneficiary of the Liquidation Trust, or to the Liquidation Trust, except for acts or omissions of the Indemnified Person that constitute fraud, willful misconduct, or gross negligence. Persons dealing with Indemnified Persons in connection with the Liquidation Trust, or seeking to assert claims against the Liquidation Trust, shall have recourse only to the Liquidation Trust Assets to satisfy any liability incurred by the Indemnified Persons to such persons in carrying out the terms of this Trust Agreement, except for acts or omissions of the Indemnified Persons that constitute fraud, willful misconduct or gross negligence.

4.2    **Indemnification.** The Trustee (and its agents and professionals) shall not be liable for actions taken or omitted in its or their capacity as, or on behalf of, the Trustee or the Liquidation Trust, except those acts arising out of its or their gross negligence, actual fraud or willful misconduct, each as determined by a Final Order from a court of competent jurisdiction. The Trustee (and its agents and professionals) shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of, the Trustee or the Liquidation Trust, except for any actions or inactions involving gross negligence, actual fraud or willful misconduct, each as determined by a Final Order from a court of competent jurisdiction. Any indemnification claim of the Trustee and the other parties entitled to indemnification under this subsection shall be satisfied from the Liquidation Trust Assets, in accordance with the Wind Down Budget. The Trustee shall be entitled to rely, in good faith, on the advice of its professionals.

**4.3    No Liability for Acts of Predecessor Trustees.** No successor Trustee or interim Trustee shall be in any way liable for the acts or omissions of any predecessor Trustee unless a successor Trustee expressly assumes in writing such responsibility.

**4.4    Reliance by Trustee on Documents, Mistake of Fact, or Advice of Counsel.** Except as otherwise provided in this Trust Agreement, the Trustee, together with its representative(s) and professionals, in good faith may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Trustee to be genuine and to have been presented by an authorized party. The Trustee, together with its representative(s) and professionals, shall not be liable if it acts based on a mistake of fact before having actual knowledge of an event or for any action taken or suffered by such person if such person has reasonably relied upon the advice of counsel or other professionals engaged by the Trustee in accordance with this Trust Agreement.

**4.5    Insurance.** Subject to approval of the Oversight Committee, the Trustee may obtain any reasonably necessary insurance coverage, at the Liquidation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties and obligations of the Trustee, which insurance coverage may, at the sole option of the Trustee, be extended for a reasonable period after the termination of this Trust Agreement; *provided*, that the cost of such coverage is provided for in, and consistent with, the Wind Down Budget.

## <u>ARTICLE V</u>

### DUTIES OF TRUSTEE

**5.1    General.** The Trustee shall have all duties specified in this Trust Agreement, the Plan and the Confirmation Order as being the responsibility of the Trustee.

**5.2    Books and Records**. The Trustee shall be provided with originals or copies of or access to all documents and business records of the Debtors necessary for the disposition of Liquidation Trust Assets and objections to Disputed Claims. The Trustee shall maintain, in respect of the Liquidation Trust, all books and records of the Liquidation Trust and the Debtors relating to the Liquidation Trust Assets, income realized therefrom, and expenses of and claims against or assumed by the Liquidation Trust, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Trust Agreement, the Plan or the Confirmation Order, nothing in this Trust Agreement is intended to require the Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or Distribution to a Beneficiary out of the Liquidation Trust Assets. The Trustee shall provide such additional statements, reports, submissions, and information to the Oversight Committee as may reasonably be requested, including without limitation, periodic updates on the status of the Liquidation Trust, its assets, and the projected timing of future Distributions (to the extent known by the Trustee).

**5.3    Creation and Maintenance of Trust Accounts.** On or prior to the Effective Date, appropriate trust accounts will be established and maintained in one or more federally insured domestic banks in the name of the Liquidation Trust. Cash deposited in the trust accounts will be invested, held and used solely as provided in this Trust Agreement. The Trustee is authorized to establish additional trust accounts after the Effective Date, consistent with the terms of this Trust Agreement, as applicable. After the funding of the trust accounts on the Effective Date, the trust accounts will be funded, as applicable, by Cash proceeds obtained through litigation or the disposition of Liquidation Trust Assets. Upon obtaining an order of the Bankruptcy Court authorizing final Distribution or closure of the Debtors' Chapter 11 Cases, any funds remaining in

the trust accounts shall be distributed in accordance with this Trust Agreement and the Plan, and the trust accounts may be closed.

**5.4    Asset Valuation.** As soon as practicable after the Effective Date, the Trustee shall make a good faith determination of the fair market value of the Liquidation Trust Assets as of the Effective Date. This valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the assets of the Liquidation Trust.

**5.5    Tax Reporting and Tax Payments.**

(a)    The Trustee shall file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations and in accordance with this Section 5.5. The Trustee also shall annually send to each Beneficiary a separate statement regarding the receipts and expenditures of the Liquidation Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(b)    The Trustee may elect to treat any Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections consistent with such tax treatment). The Trustee shall be the administrator of any such applicable Disputed Claims Reserves within the meaning of Treasury Regulation section 1.468B-9(b)(2) and shall be responsible for all tax reporting and withholding required by any such Disputed Claims Reserves.

(c)      The Liquidation Trust shall be responsible for payment, out of Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any Disputed Claims Reserves) or the Liquidation Trust Assets. More particularly, any taxes imposed on any Disputed Claims Reserves or its assets will be paid out of the assets of the Disputed Claims Reserves, and netted against any subsequent Distributions in respect of the allowance or disallowance of such Claims. In the event, and to the extent, any Cash in any Disputed Claims Reserves is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the Disputed Claims Reserves (including any income that may arise upon an actual or constructive Distribution of the assets of the reserve in respect of the resolution of Disputed Claims), assets of the Disputed Claims Reserves (including those otherwise distributable) may be sold to pay such taxes.

(d)      The Trustee may request an expedited determination of taxes of the Liquidation Trust, including any Disputed Claims Reserves, and, in the case of the Trustee, of the Debtors, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Liquidation Trust or the Debtors for all taxable periods through the dissolution of the Liquidation Trust.

## **ARTICLE VI**

## **BENEFICIARIES**

**6.1     Interest Beneficial Only.** The ownership of a beneficial interest in the Liquidation Trust shall not entitle any Beneficiary or the Debtors to any title in or to the Liquidation Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

**6.2     Evidence of Beneficial Interest.** Ownership of a beneficial interest in the Liquidation Trust Assets shall not be evidenced by any certificate, security, or receipt or in any

19

other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Trustee.

**6.3     Limitation on Transferability.** The beneficial interests herein shall be nontransferable and non-assignable during the term of this Trust Agreement other than if transferred by will, intestate succession or otherwise by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Liquidation Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Trustee may rely upon such proof without the requirement of any further investigation.

**6.4     Effect of Death, Incapacity, or Bankruptcy of Beneficiary**. The death, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidation Trust shall not operate to terminate the Liquidation Trust, nor shall it entitle the representative or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Liquidation Trust Assets or for a petition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Trust Agreement or in the Liquidation Trust.

**6.5     Standing of Beneficiary.** Except as expressly provided in this Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Trustee) upon or with respect to the Liquidation Trust Assets.

## **ARTICLE VII**

20

## DISTRIBUTIONS

**7.1    Distributions Generally; Withholding.** The Trustee or an Entity selected to make Distributions at the direction of the Trustee (the "Disbursing Agent") shall make all Distributions under this Trust Agreement to the appropriate Beneficiaries in accordance with the terms of the this Trust Agreement and the terms of the Plan. All Distributions shall be made as provided, and subject to any withholding, in this Trust Agreement, the Plan or the Confirmation Order.  To the extent applicable, the Trustee will comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Trust Agreement, the Plan and the Confirmation Order will be subject to such withholding and reporting requirements. The Trustee will be authorized to take any actions that they determine, in their reasonable discretion, to be necessary, appropriate or desirable to comply with such withholding and reporting requirements.  Notwithstanding anything to the contrary in this Agreement, each Beneficiary will have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on them by any governmental unit on account of any Distribution, including income, withholding and other Tax obligations.

**7.1.1.**   The Liquidation Trust Assets shall be distributed as follows:

(a)      Any Liquidation Trust Assets constituting "Collateral" (including proceeds thereof) under the Prepetition Indenture shall be distributed <u>first</u> to the holders of Allowed Prepetition Notes Secured Claims until payment in full, and <u>second</u> in accordance with clause (b) hereof.

(b)      Any Liquidation Trust Assets constituting unencumbered assets of the Debtors prior to the Effective Date shall be distributed (x) <u>first</u>, to the holders of Prepetition Notes Deficiency Claims until such holders have received Distributions in the aggregate equal to the Liquidation Trust Initial Funding; (y) <u>second</u>, to repayment in full of the Adequate Protection

Superpriority Claims; and (z) <u>third</u>, pro rata on account of their Liquidation Trust Beneficial Interests to the holders of Allowed General Unsecured Claims (including any Prepetition Notes Deficiency Claim).

(c)     Notwithstanding anything to the contrary herein, the Carve-Out Cash shall be distributed solely to the holders of Allowed General Unsecured Claims other than on account of Prepetition Notes Deficiency Claims.

**7.1.2**    To the extent that sufficient funds are contained in the Liquidation Trust from which to make a Distribution, the Disbursing Agent may make discretionary Distributions on an interim basis to the Beneficiaries from all net Cash income and all other Cash held in the Liquidation Trust; *provided*, *however*, that:

(a)     The Trustee shall reserve an amount sufficient to pay holders of Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Other Priority Claims, and Disputed Other Secured Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. After the resolution of Disputed Claims, the Trustee shall treat any amounts that were reserved for such Disputed Claims that do not become Allowed Claims as Net Cash Proceeds.

(b)     The Trustee may reserve such amounts (i) as are reasonably necessary to meet contingent liabilities of the Liquidation Trust; (ii) to pay reasonable administrative expenses including, the Liquidation Trust Expenses; (iii) to satisfy all other liabilities incurred or assumed by the Liquidation Trust (or to which the Liquidation Trust Assets are otherwise subject) in accordance with this Trust Agreement, the Plan and the Confirmation Order and/or (iv) as the Trustee determines in its reasonable sole discretion, to be required for any law, regulation, rule, ruling, directive or other governmental requirement, including Section 5.19 of the Plan.

**7.2** **Distribution Record Date.** The Trustee shall have no obligation to recognize any transfer of the Claims or Interests (a) occurring on or after the Effective Date, or (b) that does not comply with Bankruptcy Rule 3001(e) or otherwise does not comply with the Bankruptcy Code or Bankruptcy Rules.

**7.3** **Date of Distributions.** The Trustee shall direct an initial Distribution to holders of Allowed Claims on or as soon as reasonably practicable after the Effective Date (such date, the "Initial Distribution Date"). After the Initial Distribution Date, the Trustee shall, from time to time, determine subsequent distribution dates in accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order.

**7.4** **Disbursing Agent.** All Distributions under this Trust Agreement shall be made by the Disbursing Agent on and after the Effective Date as provided herein. The Trustee shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than the Trustee) with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the Debtors' books and records. The Trustee shall cooperate in good faith with the applicable Disbursing Agent (if other than the Trustee) to comply with the reporting and withholding requirements outlined in this Trust Agreement, Section 5.19 of the Plan and the Confirmation Order.

**7.5** **Rights and Powers of Disbursing Agent.**

(a) From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, the Beneficiaries and other holders of Claims against and Interests in the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by this Trust

23

Agreement, the Plan, the Confirmation Order or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent. No Beneficiary, other holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with or implementing provisions of this Trust Agreement, the Plan or the Confirmation Order, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.

(b)        The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (b) make all Distributions contemplated hereby; and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(c)        Any party entitled to receive any property as an issuance or Distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Entity designated by the Trustee (which Entity shall subsequently deliver to the Disbursing Agent) an appropriate Internal Revenue Service Form W-9 or, if the payee is a foreign Entity, Form W-8, and any other reasonably requested tax information. If such request is made by the Disbursing Agent, the Trustee, or such other Entity designated thereby and the holder fails to comply before the earlier of (a) the date that is one hundred and eighty (180) days after the request is made and (b) the date that is one hundred and eighty (180) days after the date of distribution, the amount of any such Distribution shall irrevocably revert to the Wind Down Estates or the Liquidation Trust, as applicable, and any

Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Liquidation Trust or its respective property.

**7.6     No Postpetition Interest on Claims.** Except as otherwise provided in the Plan, the Confirmation Order, the DIP Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims on or after the Petition Date; *provided*, that if interest is payable pursuant to the preceding sentence, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

**7.7     Delivery of Distributions.**

(a)     The Disbursing Agent shall make all distributions, allocations, and/or issuances required under this Trust Agreement, the Plan and the Confirmation Order. In the event that any Distribution to any Beneficiary is returned as undeliverable, no further distributions shall be made to such Beneficiary unless and until such Disbursing Agent is notified in writing of such Beneficiary's then-current address, at which time all currently-due, missed distributions shall be made to such Beneficiary as soon as reasonably practicable thereafter without interest. Nothing herein shall require the Disbursing Agent to attempt to locate Beneficiaries of undeliverable distributions and, if located, assist such Beneficiaries, as applicable, in complying with Section 7.13 hereof.

(b) Notwithstanding the foregoing, all Distributions of Cash on account of Prepetition Notes Claims, if any, shall be deposited with the Prepetition Agent for Distribution to holders of Prepetition Notes Claims in accordance with the terms of the Prepetition Indenture. All

Distributions other than of Cash on account of Prepetition Notes Claims, if any, may, with the consent of the Prepetition Agent, in its capacity as collateral agent, be made by the Disbursing Agent directly to holders of Prepetition Notes Claims in accordance with the terms of the Plan and the Prepetition Indenture. To the extent the Prepetition Agent effectuates, or is requested to effectuate, any Distributions hereunder, the Prepetition Agent shall be deemed a "Disbursing Agent" for purposes of this Trust Agreement.

7.8    **Disputed Claims; Insured Claims.** Notwithstanding anything in this Trust Agreement, the Plan or the Confirmation Order to the contrary, if any portion of a Claim is a Disputed Claim, no payment or Distribution shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim. Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

If any portion of an Allowed Claim is an Insured Claim, no Distributions shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Court.

7.9    **Unclaimed Property.** Undeliverable Distributions shall remain in the possession of the Liquidation Trust until such time as a Distribution becomes deliverable or the Beneficiary accepts Distribution, or such Distribution reverts back to the Liquidation Trust and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the

expiration of one hundred and twenty (120) days from the applicable date of Distribution. After

such date, all unclaimed property or interest in property shall revert to and vest in Liquidation Trust

and the Claim of any other holder to such property or interest in property shall be discharged and

forever barred.

**7.10    Time Bar to Cash Payments.** Checks issued by the Disbursing Agent in respect of

Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days

after the date of issuance thereof. Thereafter, the amount represented by such voided check shall

immediately and irrevocably revert to the Liquidation Trust and any Claim in respect of such

voided check shall be discharged and forever barred, notwithstanding any federal or state escheat

laws to the contrary. Requests for reissuance of any check prior to the expiration of the one hundred

and twenty (120) day period from the date of issuance shall be made to the Disbursing Agent by

the Beneficiary to whom such check was originally issued.

**7.11    Manner of Payment.** Except as otherwise specifically provided in the Plan, at the

option of the Trustee, any Cash payment to be made hereunder may be made by a check or wire

transfer or as otherwise required or provided in applicable agreements or customary practices of

the Debtors.

**7.12    Satisfaction of Claims; Cancellation of Liens.** Except as otherwise specifically

provided in the Plan, any Distributions and deliveries to be made on account of Allowed Claims

under the Plan shall be in complete and final satisfaction, settlement, and discharge of and

exchange for such Allowed Claims.

Except as otherwise specifically provided in the Plan, upon the payment in full in Cash of

a Secured Claim, any Lien securing a Secured Claim that is paid in full, in Cash, shall be deemed

released, and the holder of such Other Secured Claim shall be authorized and directed to release

any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Trustee to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Trustee.

7.13    **Minimum Cash Distributions.** The Disbursing Agent shall not be required to make any Distribution of Cash less than One Hundred Dollars ($100) to any Beneficiary; *provided*, that if any Distribution is not made pursuant to this Section 7.13, such Distribution shall be added to any subsequent Distribution to be made on behalf of such Beneficiary's Allowed Claim.

7.14    **Setoffs and Recoupments.** The Trustee or its designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any Distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors, the Wind Down Estates, or the Trustee may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law (other than the released Causes of Action in favor of the Released Parties under the Plan); *provided*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Trustee or its successor of any claims, rights, or Causes of Action that the Trustee or its successor or assign may possess against the holder of such Claim (other than the released Causes of Action in favor of the Released Parties under the Plan).

7.15    **Allocation of Distributions between Principal and Interest.** Except as otherwise required by law (as reasonably determined by the Liquidation Trust), Distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

**7.16    No Distribution in Excess of Amount of Allowed Claim.** Except as provided in Section 7.6 hereof, no Beneficiary shall receive, on account of its Allowed Claim, distributions in excess of the Allowed amount of such Claim.

**7.17    Distributions Free and Clear.** Except as provided herein, any distributions under this Trust Agreement shall be free and clear of and Liens, Claims, and encumbrances, and no other Entity, including the Debtors, the Wind Down Estates, the Liquidation Trust, or the Trustee, shall have any interest, legal, beneficial, or otherwise, in Assets transferred pursuant to this Trust Agreement; underline(provided), for the avoidance of doubt, the Beneficiaries hereunder shall receive Distributions in accordance with the validity, priority, and extent of the Prepetition Agent's Lien in the Liquidation Trust Assets immediately before the Effective Date, as set forth in Section 7.1 hereof.

## **ARTICLE VIII**

### **TAXES**

**8.1    Tax Treatment; No Successor in Interest.** The Liquidation Trust is intended to be treated for U.S. federal income tax purposes as a liquidating trust described in Treasury Regulation section 301.7701-4(d) and, if applicable, the Trustee can designate one or more Disputed Claims Reserves as disputed ownership funds described in Treasury Regulation section 1.468B-9. For U.S. federal income tax purposes, the transfer of assets by the Debtors to the Liquidation Trust is expected to be disregarded, and the transfer of interests in the Liquidation Trust to holders of Allowed Claims is expected to be treated (a) as the transfer of assets by the Debtors to the holders of Allowed Claims entitled to Distributions from the Liquidation Trust Assets, subject to any liabilities of the Debtors or the Liquidation Trust payable from the proceeds of such assets, followed by (b) the transfer of such assets (subject to such liabilities) by such holders to the

Liquidation Trust in exchange for the Liquidation Trust Beneficial Interests, and (c) to the extent applicable, as a transfer of assets by the Debtors to one or more Disputed Claims Reserves.

8.2     **Liquidation Purpose of the Liquidation Trust.** The Liquidation Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. Accordingly, the Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely Distributions to the Beneficiaries, and not unduly prolong their duration. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in this Trust Agreement, the Plan or the Confirmation Order. The Beneficiaries shall be recorded and set forth in a register maintained by the Trustee expressly for such purpose. The Trustee is hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Schedule A**.

8.3     **Cash Investments.** The right and power of the Trustee to invest the Liquidation Trust Assets, the proceeds thereof or any income earned by the Liquidation Trust, shall be limited to the right and power that a liquidating trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, including Revenue Procedure 94 -45, whether set forth in IRS rulings or other IRS pronouncements, and to the investment guidelines of section 345 of the Bankruptcy Code. The Trustee may expend the Cash of the Liquidation Trusts (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidation Trust during liquidation, (b) to pay the respective reasonable administrative expenses

of the Liquidation Trust (including, but not limited to, any taxes imposed on the Liquidation Trust) and (c) to satisfy other respective liabilities incurred by the Liquidation Trust in accordance with this Trust Agreement, the Plan and the Confirmation Order (including, without limitation, the payment of any taxes).

8.4     **Liquidation Trust as Grantor Trust.** The Liquidation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes with the Beneficiaries treated as grantors and owners of the Liquidation Trust. For all U.S. federal income tax purposes, all parties (including the Debtors, the Trustee and the Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in this Trust Agreement, as a transfer of such assets by the Debtors to the holders of Allowed Claims entitled to Distributions from the Liquidation Trust Assets, followed by a transfer by such holders to the Liquidation Trust. Thus, the Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

## ARTICLE IX

## TERMINATION OF TRUST

9.1     **Maximum Term.** The Liquidation Trust shall commence as of the Effective Date shall continue and remain in full force and until (i) the conclusion by settlement or Final Order of all pending litigation to which the Trustee is a party and, in the sole opinion and discretion of the Trustee, the exhaustion of all efforts to collect thereon, (ii) all of the Liquidation Trust Assets are liquidated or disposed of in accordance with this Trust Agreement and the Plan and all of the funds held by the Liquidation Trust have been completely distributed in accordance with this Trust Agreement and the Plan, (iii) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and all time periods and all opportunity for

31

such authorities to challenge such final tax returns have expired, and (iv) the order closing the Chapter 11 Cases is a Final Order. The Liquidation Trust shall terminate no later than the fifth anniversary of the Effective Date. Notwithstanding the foregoing, within 120 days of the fifth anniversary of the Effective Date, the Trustee may file a motion with the Bankruptcy Court requesting an extension of the term of the Liquidation Trust. An extension shall only be granted if the Bankruptcy Court determines that: (i) an extension is necessary to facilitate or complete the recovery on Liquidation Trust Assets and (ii) further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes. For purposes of this Section, a favorable letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Trustee shall be conclusive proof that further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes.

9.2    **Distribution Upon Termination.** Upon the termination of the Liquidation Trust, the Trustee shall distribute the remaining assets held by the Liquidation Trust, if any, including the Liquidation Trust Assets, to the Beneficiaries or other parties in interest, in accordance with this Trust Agreement, the Plan and the Confirmation Order.

At the time of making final Distributions to Beneficiaries, the Trustee may reserve amounts from the Liquidation Trust Assets that the Trustee, in its reasonable discretion, deems necessary to wind down the Liquidation Trust and close the Chapter 11 Cases. In the event that the Trustee is holding funds after making the final Distributions to Beneficiaries, on account of excess reserved amounts or Distributions returned to the Liquidation Trust due to Beneficiaries failing to negotiate Distributions issued by check, the Trustee may donate such remaining funds to a not-for-profit organization of its choosing.

**9.3**     **Winding Up and Discharge of the Trustee.** For the purposes of winding up the affairs of the Liquidation Trust at its termination, the Trustee shall continue to act as Trustee until its duties have been fully discharged. Following the dissolution and distribution of the assets held by the Liquidation Trust, including the Liquidation Trust Assets, the Liquidation Trust shall terminate, and the Trustee shall execute and cause a certificate of cancellation of the Certificate of Trust of the Liquidation Trust to be filed in accordance with the Delaware Statutory Trust Act (12 Del. Code § 3801 et seq.) (the "Act"). Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Liquidation Trust as a separate legal entity shall continue until the filing of such certificate of cancellation. After such filing, the Trustee and its agents and employees and the Oversight Committee shall have no further duties or obligations hereunder, except as required by this Trust Agreement, the Plan, or applicable law concerning the termination of a trust.

## ARTICLE X

## ADMINISTRATIVE EXPENSES

**10.1**    **Trust Administrative Expenses.** Any and all reasonable fees, costs and expenses incurred by the Liquidation Trust, the Trustee or any of the Trustee's Professionals on or after the Effective Date in connection with any of their duties under this Trust Agreement and the Plan, including any administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses (together, the "Liquidation Trust Expenses"), shall be paid from the Liquidation Trust Assets in the ordinary course of business, in accordance with the Plan, the Wind Down Budget and this Trust Agreement (including, for the avoidance of doubt, Section 2.6 hereof); *provided*, *however*, that such fees, costs and expenses are consistent with the Wind Down Budget and with

sole recourse to the Wind Down Reserve or, with the prior written consent, of the Oversight Committee.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**11.1    Amendments.** Any substantive provision of this Trust Agreement may be amended or waived in writing by the Trustee and the Oversight Committee or by order of the Bankruptcy Court if necessary to implement the Plan. Non-material amendments to this Trust Agreement may be made, as necessary to clarify this Trust Agreement or enable the Trustee to effectuate the terms of this Trust Agreement, upon written notice to the Debtors; provided, however, that all amendments of this Trust Agreement shall be consistent with the purpose and intention of the Liquidation Trust to liquidate in an expeditious but orderly manner the Liquidation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and Section 2.6 hereof. No amendment to or waiver of this Trust Agreement that is inconsistent with the terms of the Plan shall be effective.

**11.2    Exemption from Registration.** The rights of the Beneficiaries arising under this Trust Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (a) the parties hereto intend that such rights shall not be securities and (b) if the rights arising under this Trust Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Trust Agreement shall make a contrary or different contention.

**11.3    Waiver.** No failure by the Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right,

power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**11.4    Cumulative Rights and Remedies.** The rights and remedies provided in this Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**11.5    Irrevocability.** The Liquidation Trust is irrevocable.

**11.6    Relationship to the Plan.** The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and, therefore, this Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

**11.7    Division of Trust.** Under no circumstances shall the Trustee have the right or power to divide the Liquidation Trust unless authorized to do so by the Bankruptcy Court.

**11.8    Governing Law.** This Trust Agreement shall be governed and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws; provided, however, that the parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Liquidation Trust, the Trustee, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures

35

to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee set forth or referenced in this Trust Agreement. Section 3540 of the Act shall not apply to the Liquidation Trust.

      **11.9**    **Retention of Jurisdiction.** Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Trust Agreement, or any Entity's obligations incurred in connection herewith, including without limitation, any action against the Trustee or any professional retained by the Trustee or the Liquidation Trust, in each case in its capacity as such. Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that (i) any action to enforce, interpret, or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court; and (ii) all determinations, decisions, rulings, and holdings of the Bankruptcy Court shall be final and non- appealable and not subject to re-argument

or reconsideration. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, to be sent to its address set forth in Section 11.11 of this Trust Agreement.

**11.10   Severability.** In the event that any provision of this Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**11.11   Limitation of Benefits.** Except as otherwise specifically provided in this Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

**11.12   Notices.** All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person or by facsimile with an electromechanical report of delivery or if sent by overnight mail or by registered or certified mail with postage prepaid, return receipt requested, to the following addresses.

<u>If to the Debtors or the Wind Down Estates:</u>

Acorda Therapeutics, Inc.
2 Blue Hill Plaza, 3rd Floor
Pearl River, New York 10965
Attn: Neil Belloff
Email: nbelloff@acorda.com

With copy to:

Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
Attn:    Blaire Cahn
          John Dodd
Telephone: 212-626-4100
Facsimile: 212-310-1600
Email: blaire.cahn@bakermckenzie.com
          John.dodd@bakermckenzie.com

If to the Trustee:

[_____]

With copy to:

[_____]

 If to the Oversight Committee:

[_____]

With copy to:

[_____]

Notice of any application to the Bankruptcy Court shall also be provided to the Office of the United States Trustee address as follows:

Office of the United States Trustee:

[_____]

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands, requests, consents, notices and communications shall be deemed to have been given (a) at the time of actual delivery thereof, (b) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid and properly addressed, or (c) if given by overnight courier, the next business day after being sent, charges prepaid and properly addressed.

**11.13   Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Trust Agreement, and to consummate the transactions contemplated hereby.

**11.14   Integration**. This Trust Agreement, the Plan and the Confirmation Order constitute the entire agreement with, by, and among the parties, and there are no representations, warranties, covenants, or obligations except as set forth in this Trust Agreement, the Plan and the Confirmation Order. This Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided in this Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

**11.15   Successors or Assigns**. The terms of this Trust Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**11.16   Interpretation.** The enumeration and section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof. Unless the context otherwise requires, whenever used in this Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations. The words "herein", "hereby", and "hereunder" and

words with similar import, refer to this Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**11.17   Counterparts.** This Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers or agents all as of the date first above written.

**DEBTORS:**

ACORDA THERAPEUTICS, INC.

By:_____
Name:
Title:

CIVITAS THERAPEUTICS, INC.

By:_____
Name:
Title:

BIOTIE THERAPIES, LLC

By:_____
Name:
Title:

BIOTIE THERAPIES AG

By:_____
Name:
Title:

NEURONEX, INC.

By:_____
Name:
Title:

ACORDA THERAPEUTICS LIMITED

By:_____
Name:
Title:

[Signature Page to Liquidation Trust Agreement]

**TRUSTEE:**

[_____]

By:_____
Name:
Title:

<u>**Schedule A**</u>
<u>CERTIFICATE OF TRUST OF THE</u>
<u>[ACORDA THERAPEUTICS LIQUIDATION TRUST]</u>

## CERTIFICATE OF TRUST OF THE
## [ACORDA THERAPEUTICS LIQUIDATION TRUST]

This Certificate of Trust of the [Acorda Therapeutics Liquidation Trust] (the "<u>Trust</u>") is being duly executed and filed by the undersigned Trustees of the Trust, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. Code § 3801 *et seq.*) (the "<u>Act</u>").

     1.    <u>Name</u>. The name of the statutory trust formed hereby is:

**[Acorda Therapeutics Liquidation Trust]**

     2.    <u>Delaware Trustee</u>. The name and business address of the Trustee of the Trust in the State of Delaware is:

[     ]

     3.    <u>Effective Date</u>. This Certificate of Trust shall be effective upon filing.

IN WITNESS WHEREOF, the undersigned, being all of the trustees of the Trust, have duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

TRUSTEE:

[ ], not in its individual capacity, but solely as Trustee

By: _____

_____
[ ], in [his/her] capacity as a trustee and not individually.

Name: [ ]
Title:  [ ]

A-1

## EXHIBIT B

### Identification of the Liquidation Trustee

David Dunn of Province, Inc., Alex Zyngier of Batuta Capital LLC, and an additional person are currently under consideration to act as Liquidation Trustee

## EXHIBIT C

**Assumption Schedule**

**Assumption Schedule**

| Debtor | Counter Party(s) | Contract Description | Cure Amount ($) |
|---|---|---|---|
| Acorda Therapeutics, Inc. | Caremark, L.L.C. | Specialty Pharmacy Purchase and Dispensing Agreement, by and between Acorda Therapeutics, Inc. and Caremark, L.L.C. and entered into as of February 26, 2010, as amended by the First Amendment entered into as of April 12, 2010, the Second Amendment entered into as of May 27, 2010, which by its terms became effective as of March 30, 2011 (the Third Amendment"), that certain letter agreement as of June 14, 2011, which became fully executed on June 28, 2011 (the "Fourth Amendment"), and the Fifth Amendment dated April 1, 2012. | $0 |
| Acorda Therapeutics, Inc. | GRM Information Management Services | Vault Storage Agreement between Acorda Therapeutics, Inc. and GRM Information Management Services, effective as of January 3, 2023 | $0 |

## **EXHIBIT D**

**Wind Down Budget**

**Acorda Therapeutics, Inc., et al.**
**Chapter 11 Wind Down Budget**

*$ in 000s*

| | Notes | Total[a] |
|---|---|---|
| **Accrued and Unpaid Administrative & Priority Expenses** | | |
| Administrative Expense Claims | (b) | $ (33,781) |
| Post-Close Operating Budget | (c) | (3,464) |
| Priority Tax Claims | (d) | (1,315) |
| Other Priority Claims | (e) | (527) |
| **Total Unpaid Administrative & Priority Expenses** | | **$ (39,087)** |
| **Project Post Sale Expenses** | | |
| Pre-Close Professional Fees | (f) | $ (13,268) |
| Post-Close Professional Fees | (g) | (3,793) |
| Transaction Fees | (h) | (5,063) |
| U.S. Trustee Fees | (i) | (500) |
| **Total Projected Post Sale Expenses** | | **$ (22,623)** |
| Liquidation Trust Initial Funding | | (3,000) |
| **Total Expenses** | | **$ (64,710)** |

*Notes*
*(a) Amounts will be funded from the Net Sale Proceeds (as defined in the Sale Order) and cash on hand and represents amounts from the week of the closing of the Sale Transaction through the Effective Date (on or around 8/21)*
*(b) Represents expenses incurred during the Chapter 11 Cases that have not been paid*
*(c) Estimate of operating costs from the closing of the Sale Transaction through the Effective Date*
*(d) Estimate of Priority Tax Claims, including income tax payable for the 2023 calendar year*
*(e) Includes amounts attributable to accrued prepetition paid-time-off*
*(f) Estimate of professional fees through the closing of the Sale Transaction (in Professional Fee Escrow)*
*(g) Estimate of professional fees from the closing of the Sale Transaction through the Effective Date*
*(h) Transaction fees to retained professionals Ducera Partners LLC, Leerink Partners LLC, and Perella Weinberg Partners LP*
*(i) Represents estimate of U.S. Trustee fees for the second and third quarters of 2024*